**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:20-cv-03646-RBJ

HANNAH WEIKERT,
JENNIFER HERMANNS,
TERRENCE LACEY,
SEAN NELSON,
JEAN-JOSEPH LE CHIFFRE, and
GILBERT TRUJILLO, on their own and on behalf of a class of similarly situated persons,

      Plaintiffs,

v.

BILL ELDER, Sheriff of El Paso County, Colorado, in his official capacity,

      Defendant.

## STIPULATED PRELIMINARY INJUNCTION

      WHEREAS, the parties have stipulated and agreed to entry of this preliminary injunction without any admission of wrongdoing or violation of the law;

      WHEREAS, Defendant asserts that the El Paso County Sheriff's Office ("EPSO") has taken, and will continue to take, appropriate steps to protect inmates in the El Paso County Criminal Justice Center ("CJC") from COVID-19, which largely include the protocols stipulated to herein; but Plaintiffs disagree regarding what steps EPSO has taken in the past to protect inmates from COVID-19;

      WHEREAS, the parties dispute whether EPSO has violated any inmate's state and federal constitutional rights;

      WHEREAS, the parties currently are engaged in settlement negotiations regarding this dispute;

WHEREAS, the parties have agreed to the following interim terms of a stipulated preliminary injunction while their negotiations continue;

NOW, THEREFORE, without resolving the question of what Defendant has or has not done in the past, as of this date forward and for a period of 90 days, Defendant is HEREBY ORDERED to:

1) Require all staff to wear masks and face discipline for failing to do so;

2) Require all contractors to wear masks in CJC;

3) Issue all inmates two cloth masks and require inmates to wear masks;

4) Continue current COVID-19 testing protocols for inmates throughout CJC and at intake and continue current COVID-19 testing protocols for EPSO employees so long as current resources are available, such as COVID-19 testing through the Colorado National Guard and/or the Colorado Department of Public Health and Environment.  If such resources become unavailable, EPSO shall implement an alternative plan for testing as agreed in advance between the parties;

5) Require medical staff to screen and identify individuals who are at increased risk of severe illness from COVID-19 due to the following medical conditions: cancer; chronic kidney disease; COPD; heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; immunocompromised state from solid organ transplant; obesity with a BMI of 30 or greater; pregnancy; sickle cell disease, smoking; type 2 diabetes mellitus; or age 55 or older;

6) Provide inmates access to clean drinking water and not shut off the water flow to drinking fountains or access to hot water used for food and drink, and not deny access to

   drinking fountains and hot water otherwise available to inmates except for temporary maintenance reasons;

7) Require EPSO deputies to check all inmates' temperatures twice per day, tell inmates their temperatures when they are taken, and alert CJC medical staff with respect to any inmate whose temperature exceeds 99.4 degrees Fahrenheit;

8) House COVID-19 positive inmates in isolation from COVID-19 negative inmates;

9) After any inmate tests positive for COVID-19, treat such inmate as COVID-19 positive until the later of: 10 days after first positive test AND resolution of fever for at least 24 hours, without use of fever-reducing medications, AND improvement of other symptoms;

10) For any inmate who has had a fever in the last seven days and who tested positive for COVID-19 at any point in the past, if such inmate is currently classified as COVID-19 formerly positive, reclassify such inmate as COVID-19 positive if any of the following criteria are not met: 1) 10 days after first positive test; 2) resolution of fever for at least 24 hours, without use of fever-reducing medications, and 3) improvement of other symptoms;

11) To the extent feasible and taking into account the safety and security of CJC staff and inmates, ensure that inmates who are moved due to COVID-19 isolation and precautions are housed in a non-punitive environment with access to personal items such as recreation materials that can be effectively sanitized and provided as much time outside of their cells and as many visits as they were prior to such isolation;

12) As space in CJC allows and taking into account other considerations such as the safety and security of the CJC staff and inmates, the overall inmate population and spatial limitations within CJC, take reasonable measures to house inmates who are at increased

risk of severe illness from COVID-19 due to the medical conditions and/or age identified in paragraph 5 above in areas that allow for more than 6 feet of social distancing from other inmates, which may include a single cell;

13) Ensure that, at least one time per day, medical staff screen each COVID-19 positive inmate by taking his/her vitals and doing a full symptom screening conducted by CJC medical staff consistent with CDC guidelines as follows:

> Have you experienced any of the following symptoms in the past 48 hours:
>
> - fever or chills
> - cough
> - shortness of breath or difficulty breathing
> - fatigue
> - muscle or body aches
> - headache
> - new loss of taste or smell
> - sore throat
> - congestion or runny nose
> - nausea or vomiting
> - diarrhea

Medical staff will record the result of each screening including by recording vitals. Daily symptom screenings must continue until the later of ten days have passed since testing COVID-19 positive AND all fever has resolved for at least 24 hours AND other symptoms are improving;

14) During the daily symptom screenings, medical staff must inform inmates if they have any of the symptoms for COVID-19, and they must tell each inmate the results of the checks of their vitals. For any inmates with any symptoms described in the preceding paragraph, each such inmate shall be told that over the counter pain/cold medication, such as Tylenol or Mucinex, are available, and if such medication or another medication is medically appropriate, it will be issued by CJC medical staff to the inmate without a kite. During

the daily symptom screenings, CJC medical staff will issue supplemental oxygen to COVID-19 positive inmates if medically needed, and will otherwise comply with the standard of care for patients with COVID-19, including transfer to a hospital if necessary. If any inmate is issued Tylenol or Mucinex during the daily screening, that inmate shall also be afforded access to such medicine, if medically appropriate, each time the med line is conducted for the inmate's ward at least until the end of the 24-hour period until the inmate's next daily COVID-19 screening. All Tylenol and Mucinex or other medication provided for COVID-19 shall be provided free of charge. Nurse visits conducted due to an inmate experiencing COVID-19 symptoms shall be free of charge; and

15) On a weekly basis, provide Plaintiff's counsel with: (a) an electronic copy of the roster; (b) total number of COVID-19 positive inmates; (c) the number of PCR COVID tests conducted during the prior week; and (d) the number of inmates who tested positive for COVID-19 over the prior week.

THE COURT FINDS pursuant to Fed. R. Civ. P. 65(d)(1)(a) that good cause exists to issue this preliminary injunction in light of the ongoing COVID-19 pandemic and the risk of imminent injury that the pandemic poses to inmates at the El Paso County Criminal Justice Center.

THE COURT FINDS for the reasons set forth in Plaintiffs' motion for preliminary injunction that no bond is required to be posted by Plaintiffs with respect to this preliminary injunction.

THE COURT FINDS as required by 18 U.S.C. § 3626(a)(2) that this injunction has no adverse effect on public safety, does not have more than a minimal adverse effect on the operation of the criminal justice system, is narrowly drawn, extends no further than necessary to

correct the harm the Court finds requires preliminary relief, and is the least intrusive means necessary to correct that harm.

This preliminary injunction expires 90 days for the date set forth below.

SO ORDERED this 4th day of January, 2021.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge